UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------X
GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO INDEMNITY COMPANY, GEICO
GENERAL INSURANCE COMPANY, and GEICO
CASUALTY COMPANY,

                        Plaintiffs,

        -against-

ADVANCED COMPREHENSIVE LABORATORY, LLC
d/b/a TOPLAB, MARK GLADSTEIN, M.D., VICTORIA
FRENKEL, and JOHN DOE DEFENDANTS "1" – "10",

                        Defendants.
------------------------------------------------------------------------------X

Docket No.:
1:20-cv-02391
(KAM)(VMS)

**ADVANCED COMPREHENSIVE LABORATORY, LLC, MARK GLADSTEIN, M.D.,
and VICTORIA FRENKEL'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION TO STAY AND ENJOIN UNDERLYING COLLECTION
PROCEEDINGS**

The Russell Friedman Law Group
400 Garden City Plaza
Suite 500
Garden City, NY 11530
Telephone: 516-355-9600

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF RELEVANT FACTS .................................................................................. 2

ARGUMENT ........................................................................................................................... 11

    I.    Legal Standard ............................................................................................... 11

    II.   Plaintiffs Cannot Establish Irreparable Harm ............................................. 14

    III.  Plaintiffs Arguments Fail With Regard to Either Avenue
           Through Which They Could Obtain an Injunction ...................................... 18

           A. Plaintiffs Have Not Established a Likelihood
              Of Success on the Merits or  Sufficiently Serious Questions
              Going to the Merits to Make Them a Fair Ground for Litigation ......................... 18

           B. The Balance of Hardships Tips Decidedly In Defendants' Favor .......................... 20

    IV.  If This Court Grants Plaintiffs' Motion,
           Plaintiffs Should Be Required To Post Bond ............................................. 22

CONCLUSION ........................................................................................................................ 23

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Allstate Ins. Co. v. Avetisyan*,
No. 17-cv-04275(LDH)(RML), 2018 WL 6344249  (E.D.N.Y. Oct. 30, 2018).......................14
*Allstate Ins. Co. v. Elzanaty*,
929 F. Supp. 2d 199 (E.D.N.Y. 2013).................................................................................12, 18
*Allstate Ins. Co. v. Harvey Family Chiropractic*,
677 F. App'x 716, 718 (2d Cir. 2017) ...............................................................................15
*Brenntag Int'l Chem., Inc. v. Bank of India*,
175 F.3d 245, 249 (2d Cir. 1999)......................................................................................14
*Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*,
598 F.3d 30 (2d Cir. 2010)................................................................................................18
*Gov't Employees Ins. Co. v. Cean*,
19-cv-2363, 19-cv-2363, 2019 WL 6253804 (E.D.N.Y. Nov. 22, 2019) ...............................12
*Gov't Emps. Ins. Co. v. Mayzenberg*,
2018 WL 6031156 (E.D.N.Y. Nov. 16, 2018) .........................................................................13
*Gov't Emps. Ins. Co. v. Moshe*,
20-cv-1098, 2020 WL 3503176 (E.D.N.Y. June 29, 2020)..........................................3, 12
*Gov't Emps. Ins. Co.* v. *Strut*,
2019 WL 6338023 (W.D.N.Y. Nov. 26, 2011)...................................................................13, 22
*Gov't Emps. Ins. Co.* v. *Strutsovskiy*,
2017 WL 4837584 at *6 (W.D.N.Y. Oct. 26, 2017)..............................................................13
*Gov't Emps. Ins. Co. v. Wellmart, Rx, Inc.*
435 F. Supp. 3d 443 (E.D.N.Y. 2020)...............................................................................12
*Grand River Enters. Six Nations v. Pryor*,
2006 WL 1517603, at *6, (S.D.N.Y. June 1, 2006) ............................................................11
*Green Party of New York State v. New York State Bd. of Elections*,
389 F.3d 411, 418 (2d Cir.2004).......................................................................................11, 19
*Gulf Oil Corp. v. Dep't of Energy*,
514 F.Supp. 1019, 1026 (D.D.C. 1981) .............................................................................15
*Harmonic Physical Therapy, P.C. v. Praetorian Ins. Co.*,
47 Misc. 3d 137(A) (App. Term 1st Dept. 2015)...................................................................21
*Hi–Tech Pharmacal Co., Inc. v. U.S. Food & Drug Admin.*,
587 F.Supp.2d 1, 11 (D.D.C. 2008) ..................................................................................14
*Interlink Int'l Fin. Servs., Inc. v. Block*,
145 F. Supp. 2d 312, 315 (S.D.N.Y. 2001) ........................................................................22
*Jayaraj v. Scappini*,
66 F.3d 36, 39 (2d Cir. 1995)............................................................................................15
*Mazurek v. Armstrong*,
520 U.S. 968, 972 (1997) ..................................................................................................11

*McMahon v. Johnson,*
   2014 WL 6886096, at *1 (E.D.N.Y. Dec. 8, 2014)................................11, 14, 17, 19

*Moore v. Consol. Edison Co. of New York,*
   409 F.3d 506, 510 (2d Cir. 2005) ........................................................................14

*Nyack Hospital v. General Motors Acceptance Corp.,*
   8 N.Y.3d 294, 832 N.Y.S.2d 880 (2007) ...........................................................21

*Perkins v. Schriro,*
   2014 WL 2003014, at *2 (E.D.N.Y. May 14, 2014)......................................11, 18

*Retirement Sys. Of Ala. v. J.P. Morgan Chase & Co.,*
   386 F.3d 419, 429 (2d Cir. 2004) ........................................................................17

*Rodriguez v. DeBuono,*
   175 F.3d 227, 234 (2d Cir.1999). .......................................................................14

*State Farm Mu. Auto. Ins. Co. v. Parisien,*
   352 F. Supp. 3d 215, 234 (E.D.N.Y. 2018)..............................................12, 18, 19

*Shearson/Am. Exp., Inc. v. McMahon,*
   82 U.S. 220, 259 (1987) ......................................................................................17

*SR Intern. Bus. Ins. Co. Ltd. v. World Trade Ctr. Properties, LLC,*
   445 F. Supp. 2d 356 at 360..................................................................................17

*Tough Traveler, Ltd. v. Outbound Prods.,*
   60 F.3d 964, 968 (2d Cir.1995)..........................................................................15

*Town of Riverhead v. CSC Acquisition-NY, Inc. (Cablevision),*
   618 F. Supp. 2d 256, 262 (E.D.N.Y. 2009).........................................................11

*Toxco, Inc. v. Chu,*
   724 F.Supp.2d 16, 30 (D.D.C. 2010) ..................................................................14

*Tucker Anthony Realty Corp. v. Schlesinger,*
   888 F.2d 969, 975 (2d Cir.1989)....................................................................14, 16

*UBS Fin. Servs., Inc. v. W. Virginia Univ. Hosps., Inc.,*
   660 F.3d 643, 648 (2d Cir. 2011). ......................................................................11

*Wisdom Imp. Sales Co. v. Labatt Brewing Co.,*
   339 F.3d 101, 113 (2d Cir. 2003) ........................................................................14

## **Statutes**

11 N.Y.C.R.R. § 65-4.4 ............................................................................................15

11 NYCRR §§65 ..................................................................................................2, 21

Fed. R. Civ. P. 65(c) .................................................................................................22

N.J.S.A. 39:6B-1 to 3 .................................................................................................2

N.Y. Ins. Law §§5101 .................................................................................................2

## PRELIMINARY STATEMENT

Defendants Advanced Comprehensive Laboratory, LLC ("Advanced Comprehensive"), Mark Gladstein, M.D., and Victoria Frenkel (collectively "Defendants") submit this memorandum in opposition to Plaintiffs' motion to stay and enjoin Defendants' underlying collection proceedings.  Defendants are a full clinical reference laboratory that offers a wide array of services including pathology, toxicology, COVID-19 screening both in New Jersey and across the nation, and two of its three owners, Dr. Gladstein and Frenkel.  Pursuant to valid prescriptions from a large number of physicians operating out of medical clinics, ambulatory surgery centers, anesthesia practices, and interventional pain management practices located both in New York and New Jersey, Defendants lawfully provided health care services to insureds injured in motor vehicle accidents covered by policies issued by Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (hereinafter altogether "Plaintiffs" or "GEICO").  GEICO now seeks to stay more than 2,430  pending arbitration proceedings filed by Advanced Comprehensive, reflecting at least $6,548,000 in unpaid no-fault insurance benefits for GEICO-insured patients for whom Defendants provided the prescribed medical services.   GEICO's motion for a stay and injunctive relief is founded on unsupported allegations, the of GEICO's Claims Manager, the declaration of a purported expert whose opinion contradicts his own prior publications.  Moreover, the basis proffered is a transparent attempt to create an illusion of fraud so as to permit GEICO to avoid paying the outstanding claims.  As such, Plaintiffs' motion should be denied.

First, GEICO cannot demonstrate irreparable harm due to potentially inconsistent rulings from No-Fault arbitrations or Civil Court actions.  Second, the balance of hardships that would

result from the imposition of the stay and injunction sought by GEICO undeniably tips in favor of denial of same.

In bringing this motion, GEICO ignores the existence of the long-standing, comprehensive, state regulatory framework for the adjudication of disputed no-fault insurance claims in New York. By attempting to deal with these bills in a wholesale fashion, GEICO is not only trying to avoid its obligations under the promulgated laws and regulations, but is also blatantly engaging in forum-shopping.

## STATEMENT OF RELEVANT FACTS

This action purports to be a civil RICO action (18 U.S.C 1962(c) and (d)), with additional causes of action for common law fraud, aiding and abetting fraud, and unjust enrichment.  Plaintiffs are seeking, *inter alia*, the recovery of more than $945,000.00 paid to Advanced Comprehensive under New York and New Jersey's no-fault system of reimbursement for motor vehicle accident victims (N.Y. Ins. Law §§5101 *et seq*. and 11 NYCRR §§65 *et seq*.; N.J.S.A. 39:6B-1 to 3 and N.J.S.A. 39:6A-1 *et seq*.)  Additionally, Plaintiffs seek a declaratory judgment absolving them from payment of more than $8,800,000.00 in pending no-fault insurance claims submitted by Advanced Comprehensive.

Advanced Comprehensive, doing business as Toblab®, is a full clinical reference laboratory.  Established in 2018, Advanced Comprehensive has quickly gained a reputation of using the latest technology to provide reliable results. Advanced Comprehensive in no way limits its services to no-fault insurance patients, but instead serves clients across the country and accepts an extensive list of insurances.

Plaintiffs' Complaint asserts they are entitled to relief based on the following generally pled allegations:

(i)     the Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds;

(ii)    the Fraudulent Services – to the extent that they were provided at all – were illusory and useless as the results of the urine drug screens were routinely not reported or reviewed for their purported intended purpose, not incorporated into the Insureds treatment plans, and played no genuine role in the treatment or care of the Insureds; and

(iii)   the Fraudulent Services were provided – to the extent that they were provided at all – through the use of illegal kickback and referral arrangements in violation of material licensing laws and regulations.

Further, Plaintiffs allege the Defendants at all relevant times had knowledge of (i)-(iii) above, and as such, never had any right to be compensated by Plaintiffs for the claims at issue.  Complaint, ¶¶ 6-7.  As set forth below, despite GEICO's reference to the "full contours of Defendants' fraudulent scheme" that are allegedly set forth in the Compliant, along with Exhibit 1 to the Complaint, and the additional reliance on the Declarations of Christopher Gharibo, M.D. ("Dr. Gharibo") and claim manager Robert Weir ("Weir"), Plaintiffs fail to adequately support the allegations in their Complaint to the extent necessary to support the extreme relief requested from this Court.  Instead, the hollow documents upon which Plaintiffs rely support Defendants' contention that the instant motion, like motions filed by GEICO in a host of similar litigations, has become the tool of choice by which insurers bypass and essentially foreclose the state-mandated arbitration process for the adjudication of no-fault claims.  Plaintiffs' sense of entitlement to such relief, even absent appropriate evidence, is evident both in their moving papers, where they cite *Gov't Emps. Ins. Co. v. Moshe*, 20-cv-1098, 2020 WL 3503176 (E.D.N.Y. June 29, 2020), for the contention that "a complaint alone can be sufficient to grant an injunction,"[1] and by Plaintiffs' counsel in the

---

[1] GEICO's motion for a stay and injunction was granted with little discussion of the facts relevant to the case that distinguished *Moshe* from the caselaw cited by GEICO.  Specifically, the motion relied on the bald allegations in the Complaint that were supported by nothing more than attorney conjecture and agreement.  The Memorandum and Order reference "regulatory violations," which are irrelevant to any issue raised in the Complaint, *i.e.*, smoke and mirrors, as well as purported "unnecessary medical services" and "unlawful referrals", for which GEICO set forth no

Argument before this Court on August 24, 2020.  Specifically, Mr. Sirignano boasted that he previously obtained the requested relief "based purely on a complaint alone without any kind of other evidence".  Tr., 8:5-9.

To get around Your Honor's admonishment that relief will not be granted absent the requisite evidence, GEICO has attempted to create the illusion of support for its motion.  However, GEICO falls short of meeting the standard for a stay and injunction in this litigation.

## I.   GEICO'S COMPLAINT, INCLUSIVE OF EXHBIT 1, CONTAINS NO MORE THAN UNSUPPORTED ATTORNEY CONJECTURE

GEICO's memorandum in support of its motion references the "Complaint's detailed allegations" as well as "an exhibit detailing thousands of specific fraudulent charges".  However, that description is far from accurate.

GEICO's Complaint weighs in at a thin 37 pages.  It alleges that the services provided by Defendants were not medically necessary and were provided pursuant to pre-determined protocols, that the services were illusory and useless as results were "not reported or reviewed for their purported purpose", and provided through the use of illegal kickback and referral arrangements. The Complaint provides no support for these allegations.

### A.   GEICO'S COMPLAINT CONTAINS NO SUPPORT FOR ITS CONTENTION THAT THE SERVICES WERE NOT MEDICALLY NECESSARY AND PROVIDED PURSUANT TO PREDETERMINED TREATMENT PROTOCOLS

GEICO's Complaint alleges that its Insureds were first retreated at various medical clinics located through the New York metropolitan area, and at various ambulatory surgery centers, anesthesia practices, and interventional pain management practices located in both New York and New Jersey.  GEICO contends that the ambulatory surgery centers, anesthesia practices, and

_____

support whatsoever.  *Moshe*, 2020 WL 3503176 (E.D.N.Y. June 29, 2020). An appeal of that decision is currently pending before the United States Court of Appeals for the Second Circuit.

interventional pain management practices constituted the majority of Advanced Comprehensive's referral sources.  Complaint, ¶ 54-55.  From these allegations, GEICO baldly concludes that "[t]he Fraudulent Services billed under the names of Advanced Labs were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants."  Complaint, ¶ 58.

The only "support" the Complaint provides for this allegation is that a surgery center at which patients who received services from Defendants were treated had briefly been closed due to lapses in infection control.  Complaint, ¶ 56-57.  GEICO fails to provide a single example of an alleged "protocol," nor could it as Defendants render services solely based on prescriptions for such services from licensed physicians.  The large number of sources for such prescriptions referenced by GEICO alone belies the presumption that they resulted from a scheme. Further, GEICO does not provide a single example of a patient for whom Defendants' billed for services who did not in fact receive those services.  As such, GEICO's Complaint does not support this allegation.

## B. GEICO'S COMPLAINT CONTAINS NO SUPPORT FOR ITS CONTENTION THAT THE SERVICES WERE ILLUSORY AND USELESS AS RESULTS WERE "NOT REPORTED OR REVIEWED FOR THEIR PURPORTED PURPOSE"

GEICO states that urine drug screens may be useful only "in highly select cases, involving more advanced anesthesia services," and in legitimate clinical settings "in advance of prescribing a controlled substance".  Complaint, ¶ 63-64.  GEICO avers that "[i]n the very limited situations where a urine drug test is warranted, the standard or care…first involves the performance of an initial qualitative test."  Complaint, ¶ 65.  GEICO further sets forth that "in the absence of suspected drug use or illicit drug use, quantitative testing of illicit drugs or prescription medication

is ordered markedly less frequently and is not medically necessary in the first instance." Complaint, ¶ 73.

GEICO cites Exhibit 1,[2] which allegedly lists claims for which there was no indication that the Insureds were "demographically or medically high risk," and from that concludes there was no legitimate question regarding the medications that the Insureds were taking, and there were no legitimate concerns regarding the performance of the routine surgeries that warranted urine drug screens.   Complaint, ¶ 76-77.   However, this allegation contradicts a publication authored by GEICO's own expert, which states that "[d]espite known risk factors for drug abuse (personal or family history of drug abuse, history of illegal activities, young age, self-reported craving for the opioid, drug experimentation starting before age 13 ) and assumed risk factors not as well validated by the literature (male gender, number or dose of opioids, physician intuition ), physicians can not reliably assess potential drug abuse/misuse among a broad spectrum of pain patients without some sort of test." *Id*. at 500.   Strong Decl. Ex. A, p. 500.

GEICO admits that the practitioners ordered drug screens "in connection with anesthesia services for routine surgeries and/or interventional pain management treatment and procedures" and provides examples of instances where the results were provided after a procedure was performed or a prescription was issued.   Complaint, ¶ 78-80.   However, the examples, if true, do not support a lack of medical necessity, but rather show a conscientious and responsible decision on the part of <u>the physician ordering the test</u>, not the laboratory that conducted it, to monitor each patient over the course of treatment and not just at a single instance.   Specifically, it has been

---

[2] Although GEICO touts Exhibit 1 as support for the allegations in its Complaint, the exhibit merely contains a list of the claims that GEICO alleges resulted from the purported scheme (i.e., the claims that Advanced Comprehensive submitted to GEICO for payment through March 2020).  The Exhibit fails to specifically set forth the manner in which any claim listed therein is fraudulent, and contains no substantive information from which such information could be gleaned.

reported that "[u]rine drug testing…is a widely available and familiar method for monitoring opioid use in chronic pain patients.  Urine drug testing can help track patient compliance and expose possible drug misuse and abuse."  Strong Decl. Ex. A, p. 497.  Further, "[p]atients often do not voluntarily report prescription drug misuse or illicit substance use, and some may feign symptoms to obtain opioids for diversion, which necessitates objective assessments such as drug monitoring."  Strong Decl. Ex. B, p. 98 (internal citations omitted).  Therefore, "drug monitoring has important implications for compliance with regulatory mandates and standards for responsible opioid prescribing".  *Id*.  Thus, despite late received results, physicians had the results of drug screening available to them for the duration of each patient's ongoing treatment, rendering them useful for continued monitoring of patient drug use.

GEICO proceeds to contend that "in order to maximize profits… Advanced Labs purportedly received referrals requesting multiple urine drug screens for each individual insured" with results generated after the Insured received anesthesia services, listing examples with such timing, and further contends that Advanced Comprehensive conducted both qualitative and quantitative tests.  However, as discussed above, these allegations contain no support regarding any maximization of profit that resulted from these tests. Ultimately, these allegations ignore the fundamental fact that physicians ordered the rendered services at issue.  Individual GEICO insured patients do not have the ability, nor do the alleged John Doe "unlicensed laypersons," to obtain the services absent a valid order from a physician.  Further, Defendants cannot provide such services absent a valid order from a prescription.  Yet, GEICO's Complaint is silent with regard to the physicians who ordered the tests, and the actual orders from which they resulted.  The Complaint contains no allegations or support regarding the use of false prescriptions for such testing.

7

## C.   GEICO'S   COMPLAINT   CONTAINS   NO   SUPPORT   FOR   ITS ALLEGATIONS   OF   ILLEGAL   KICKBACKS   AND   REFERRAL ARRANGEMENTS

GEICO alleges that "[i]n order to obtain as many patient referrals and names as possible, Advanced Labs, Gladstein, and Frenkel entered into illegal financial arrangements with unlicensed laypersons."  Complaint, ¶ 54.  GEICO's evidence for this allegation is solely that "[a]bsent the payment of kickbacks, Advanced Labs' referral sources would not refer patients to Advanced Labs".  Complaint, ¶ 106.  Further, GEICO alleges that "Advanced Labs, Gladstein, and Frenkel paid a financial kickback for each of the particular referrals made for the Fraudulent services…at or near the time the referrals were issued."  Notably, the Complaint does not contain one single example of a kickback or a financial incentive paid by Defendants to any of the "John Doe" unlicensed laypersons.  Further, GEICO does not give a single example of an instance where an unlicensed layperson forced a prescription to order the testing at issue in this litigation.  GEICO provides the declaration of its Claims Manager, Robert Weir, but like the Complaint, his Declaration provides no support for these allegations.  As such, GEICO provides no support for its allegations of illegal kickbacks and referral arrangements.

Plaintiffs sole support for this allegation is that one such facility that prescribed testing carried out by Advanced Comprehensive was closed for several weeks due to "lapses in infection control".  Complaint, ¶ 57.

## II.   THE DECLARATION OF ROBERT WEIR DOES NOT SHOW GEICO WILL SUFFER IRREPARABLE HARM ABSENT THE RELIEF SOUGHT

The Declaration of Weir is silent with regard to any irreparable harm GEICO will endure absent the requested injunctive relief.  Further, Weir incorrectly states that GEICO is unable to present complex fraud claims and defenses in the context of the No-fault arbitration system.

Additionally, Weir sets forth the potential for damages that are purely speculative. Specifically, Weir states that "healthcare providers routinely withdraw claims without prejudice after matters are moved to arbitration". Weir Decl., ¶ 17. However, Weir has not set forth a single instance in which the Defendants in this action have withdrawn claims and therefore caused GEICO to lose the necessary fees paid for arbitration.

Further, Weir states that GEICO is "generally…not permitted to seek or obtain pre-hearing discovery that could be used to demonstrate a pattern of medically-unnecessary or illusory treatment occurring across multiple patients and multiple claims". Weir Decl., ¶ 19. Not only does this disregard the procedures that allow insurance companies to obtain claim verification from Defendants and the physicians ordering the services, but also contradicts his earlier statement that "the fraudulent scheme being perpetrated by Advanced Labs becomes evident by analyzing the patterns across the claims as a whole". Weir Decl., ¶ 10. Weir fails to explain any mechanism by which evidence of the purported scheme would be excluded from the arbitration process. Specifically, GEICO has allegedly identified the purported scheme and has set forth to this Court that it has a good faith basis for alleging same. GEICO cannot now claim it has the disadvantage of not being able to identify the scheme because the arbitration process is limited to discreet claims.

## III.    THE DELCARATION OF DR. GHARIBO CONTRADICTS HIS OWN PEER-REVIEWED PUBLICATION

The Declaration of Dr. Gharibo largely mirrors the wording of GEICO's Complaint. As set forth above, such allegations are inconsistent with the practices set forth in peer-reviewed medical journals.

Specifically, as set forth in Exhibit A, an article in which Dr. Gharibo is a named author, "[t]he two main goals of urine drug testing in the population receiving opioid therapy for chronic

pain are to ensure compliance (determine presence of prescribed opioid drugs) and monitor for use of nonprescribed or illicit substances." Ex. A, p. 498. Further, "review of the literature found that a small percentage of chronic pain patients prescribed chronic opioid analgesic therapy will develop abuse or addiction to the drug (3.27%) and a larger percentage will demonstrate some aberrant drug-related behaviors and illicit drug use (11.5%)." *Id.* An earlier study "reported 23% of chronic pain patients prescribed opioids will become addicted and other investigators state that drug overuse, misuse, or abuse may have a prevalence of above 40%." *Id.*

The article further states that "urine tests administered to patients on opioid therapy should be positive for the presence of the prescribed medication; otherwise, the patient is noncompliant and may even be diverting drugs" and "[u]rine drug testing should also identify any illicit drugs". Further, with regard to GEICO's assertion that drugs tested are not readily available to the population, the article explains that "[i]t is known, for example, that codeine metabolizes in the body to morphine, so a codeine patient may be "clean" and test positive for morphine. Morphine is thought to metabolize into both morphine products and smaller concentrations of hydromorphone". *Id.*, p. 499.

With regard to a patient's risk factors, Dr. Gharibo previously reported that "[d]espite known risk factors for drug abuse (personal or family history of drug abuse, history of illegal activities, young age, self-reported craving for the opioid, drug experimentation starting before age 13) and assumed risk factors not as well validated by the literature (male gender, number or dose of opioids, physician intuition), physicians can not reliably assess potential drug abuse/misuse among a broad spectrum of pain patients without some sort of test." *Id.* at 500 (internal citations omitted). This is in contradiction to his Declaration, in which he states that "[i]n a legitimate clinical setting and in the absence of suspected drug use or illicit drug use, quantitative testing of

illicit drugs or prescription medication…is not medically necessary in the first instance". Gharibo decl., ¶ 10.

With regard to qualitative and quantitative testing, Dr. Gharibo previously reported that "there are two main types of urine testing which should be used in combination among patients on opioid therapy: a screening test (usually immunoassay) and a confirmation test (utilizing some form of mass spectrometry [MS] )," and highlighted the differences between the tests. *Id.*, p. 501. Dr. Gharibo now opines the confirmation test should only be used in cases where the qualitative drug testing results in a "positive". Gharibo decl., ¶ 9.

As such, it is clear that Dr. Gharibo's Declaration contradicts his previously reported conclusions, which do not support GEICO's contentions.

## **ARGUMENT**

For the reasons set forth below, GEICO's motion to stay all no-fault insurance collection arbitrations pending before the American Arbitration Association ("AAA") and to enjoin the Defendants from commencing any new no-fault insurance collection arbitrations or civil court collection lawsuits against GEICO should be denied.

### I.   **Legal Standard**

To prevail on its motion to stay and enjoin collection proceedings, GEICO must establish that it will suffer irreparable harm absent the injunction and either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *McMahon v. Johnson*, 2014 WL 6886096, at *1 (E.D.N.Y. Dec. 8, 2014) *citing Green Party of New York State v. New York State Bd. of Elections,* 389 F.3d 411, 418 (2d Cir.2004). *See also* 2014 WL 2003014 at *2 (the failure to present a factual basis for likelihood of success on the merits

warrants denial of application). Courts have considered the dual request for a stay and injunction of future proceedings in tandem, utilizing the same standard. *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 217 (E.D.N.Y. 2013).

Such relief is "one of the most drastic tools in the arsenal of judicial remedies." *Town of Riverhead v. CSC Acquisition-NY, Inc. (Cablevision),* 618 F. Supp. 2d 256, 262 (E.D.N.Y. 2009) (quoting *Grand River Enters. Six Nations v. Pryor*, 2006 WL 1517603, at *6, (S.D.N.Y. June 1, 2006)). Within the context of a motion to stay a FINRA arbitration, the Second Circuit has held "preliminary injunction is an extraordinary remedy never awarded as of right." *UBS Fin. Servs., Inc. v. W. Virginia Univ. Hosps., Inc*., 660 F.3d 643, 648 (2d Cir. 2011).

The Supreme Court has explained that the burden on a movant seeking a preliminary injunction is even higher than a motion for summary judgment. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("[at] issue here is not even a defendant's motion for summary judgment, but a plaintiff's motion for preliminary injunctive relief, as to which the requirement for substantial proof is much higher."). A party seeking such drastic relief must make a "clear showing" of entitlement. *Id.* Here, Plaintiffs fail to show any such entitlement.

GEICO states that "numerous courts – in highly analogous no-fault insurance fraud cases, under virtually identical circumstances – have stayed pending no-fault collection arbitrations, and enjoined the commencement of no-fault collections proceedings" pending disposition of the claims. Memorandum at 2-3. In making this argument, GEICO relies on *Gov't Emps. Ins. Co. v. Wellmart, Rx,* 435 F. Supp. 3d 443 (E.D.N.Y. 2020), an Order by Your Honor granting a stay and injunction of no-fault collections. However, the facts of this case are markedly different from those that were dispositive in *Wellmart*, where the Court found the "critical fact looming over the proceedings" was that "[t]he record strongly suggests that Wellmart is rendering itself judgment-

proof to frustrate any potential money judgment awarded to GEICO." *Id.* at 452. Specifically, Wellmart ceased operations and sold its assets, and Wellmart's bank statements strongly suggested the methodical depletion of assets to frustrate a potential judgment. *Id.* There is no indication that similar concerns exist in the instant action.

The other cases GEICO relies on are also distinguishable in that the stays and injunctions granted were based on well-pled complaints and solid factual support.[3] See *Gov't Emps. Ins. Co. v. Cean*, 19-cv-2363, 2019 WL 6253804 (E.D.N.Y. Nov. 22, 2019), (the holding with regard to the unopposed motion not analogous as the complaint cited to a criminal indictment and guilty plea of a co-conspirators for health care fraud and included multiple exhibits detailing the fraudulent claims); *State Farm Mu. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215, 234 (E.D.N.Y. 2018) (State Farm submitted detailed grids purporting to show the initial evaluations made of patients, the services and supplies rendered, and how those services and supplies were billed, provided copies of documents allegedly containing false statements by some of the Defendants, and presented a sworn affidavit on behalf of Defendant containing apparently false information); *Gov't Emps. Ins. Co. v. Mayzenberg*, 2018 WL 6031156 (E.D.N.Y. Nov. 16, 2018)(concluding there was more than a likelihood of proving that Mayzenberg conspired in illegal fee-splitting, kickback, and referral arrangement after "a review of the Amended Complaint, the Exhibits submitted with the motion, and Mayzenberg's testimony", with such exhibits including bank records, certificates of incorporation, financial records and checks); *Gov't Emps. Ins. Co.* v. *Strut*, 2019 WL 6338023 (W.D.N.Y. Nov. 26, 2011) at *2-3, 9 (the "prior circumstances" including a guilty plea to a criminal indictment "knowingly and willfully make

---

[3] As discussed in footnote 1 above, the Defendants in *Moshe* made a similar argument. GEICO's motion was granted, however, it was granted with little discussion of the facts relevant to the case. An appeal of that decision is currently pending before the United States Court of Appeals for the Second Circuit.

materially false and fraudulent statements and representations in connection with the delivery of, and payment for, health care services" added some context to the considerable detail that GEICO has placed in the present complaint"); and *Gov't Emps. Ins. Co.* v. *Strutsovskiy*, 2017 WL 4837584 at *6 (W.D.N.Y. Oct. 26, 2017)(GEICO presented evidence including "(1) Strutsovskiy's felony conviction in connection with an insurance fraud scheme…; (2) his dire financial straits; (3) the boilerplate language in his initial examination reports which did not vary among patients; and (4) the declarations of two physicians concluding that the defendants routinely misrepresented the complexity of the problems presented by GEICO insureds").

The evidence set forth by GEICO with regard to this motion does not approach the evidence presented by plaintiffs in instances where the insurance carriers' motions were successful. Specifically, as set forth above, the Complaint in this action is lacking support for its allegations although GEICO purportedly provides "examples," said examples do not support the contentions with which they are associated. Further, the Weir Declaration does no more than set forth the number of pending arbitrations and the dollar amount associated with same. Lastly, the Gharibo declaration, though on its face appears to support GEICO's contentions, is inconsistent with prior publications authored by Dr. Gharibo on key points. Therefore, GEICO has failed to meet the standard established by the cases on which it relies.

## II. Plaintiffs Cannot Establish Irreparable Harm

The first prong that GEICO must establish is irreparable harm. *McMahon*, 2014 WL 6886096 at *1. It is well settled that showing irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Rodriguez v. DeBuono,* 175 F.3d 227, 234 (2d Cir.1999). "To establish irreparable harm, plaintiffs must demonstrate an injury that is neither remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp. v.*

*Schlesinger,* 888 F.2d 969, 975 (2d Cir.1989) (internal quotations omitted). *See also Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (explaining that irreparable harm exists "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied"). This element is so critical to the Court's inquiry that the Court need not reach any of the other requirements necessary for the grant of injunctive relief where irreparable harm has not been demonstrated. *See Allstate Ins. Co. v. Avetisyan*, No. 17-cv-04275(LDH)(RML), 2018 WL 6344249, at *2 (E.D.N.Y. Oct. 30, 2018).

Where the damages sought in an underlying lawsuit are exclusively monetary in nature, it has been frequently noted that irreparable harm does not exist. *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510 (2d Cir. 2005); *see also Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 113 (2d Cir. 2003) (irreparable harm is "certain and imminent harm for which a monetary award does not adequately compensate"). For economic injury to be irreparable, a plaintiff must show that it will suffer harm that is "'more than simply irretrievable; it must also be serious in terms of its effect on the plaintiff.'" *Toxco, Inc. v. Chu,* 724 F.Supp.2d 16, 30 (D.D.C. 2010) (*quoting Hi–Tech Pharmacal Co., Inc. v. U.S. Food & Drug Admin*., 587 F.Supp.2d 1, 11 (D.D.C. 2008)). "Purely economic harm is not considered sufficiently grave under this standard unless it will cause extreme hardship to the business, or even threaten destruction of the business." *Id*. (*quoting Gulf Oil Corp. v. Dep't of Energy*, 514 F.Supp. 1019, 1026 (D.D.C. 1981). Irreparable harm is also predicated on urgency. When a party knows the potential injury but fails "to act sooner, the sense of urgency that ordinarily accompanies a motion for preliminary relief is undercut and suggests that there is, in fact, no irreparable injury." *Tough Traveler, Ltd. v. Outbound Prods.,* 60 F.3d 964, 968 (2d Cir.1995).

In *Allstate Insurance Co. v. Harvey Family Chiropractic*, 677 Fed. Appx. 716 (2d Cir. 2017), a RICO case against a no-fault healthcare provider, wherein the carrier, Allstate Insurance Company, sought an injunction against pending and future state court litigations and arbitrations in New York's No-Fault System, the Second Circuit unambiguously held that the necessity to go forward with underlying state claims during the pendency of the federal action was not by any means "irreparable harm" so as to justify that the state proceedings be enjoined. Specifically, the Court held:

> There is no evidence in the record that, upon the conclusion of this matter, the plaintiffs cannot be fully compensated through money damages for the alleged harm suffered from the defendants' fraudulent claims. **Even if the defendants obtain other No-Fault reimbursements in state court and arbitrations while this case is pending, the plaintiffs are free to recover those payments should they prevail on their RICO claim. Moreover, the "mere injuries ... in terms of money, time and energy necessarily expended" absent a stay of ongoing state court and arbitration proceedings "are not enough" to establish irreparable harm.** *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) (internal quotation marks omitted). Nor is the declaratory relief sought by the plaintiffs threatened by the other proceedings.

*Harvey Family Chiropractic*, 677 F. App'x at 718 (emphasis added).

GEICO Claims Manager Robert Weir posits that if the subject claims are permitted to proceed in arbitration, Plaintiffs will be irreparably harmed due to the "risk of multiple inconsistent judgments," and because insurers, like GEICO, are unable to "litigate the legitimacy of the thousands of Advanced Labs' No-fault insurance charges" as there is no substantive discovery process and the parties are typically restricted to 15-minute hearing slots.  Weir Declaration, ¶ 10, 18-19.  While it is true that the American Arbitration Association (AAA) administers a program in New York State, which is designed to provide consumers, health service providers, and insurance carriers with a forum for the *speedy* resolution of disputes concerning claims for benefits under No-Fault automobile insurance, the program also affords more robust options for parties

presenting with more complicated No-Fault disputes.  *See*, AAA, NY No-Fault Frequently Asked Questions, available at http://go.adr.org/rs/294-SFS-516/images/AAA_NY_NoFault_FAQs.pdf.

Specifically, 11 N.Y.C.R.R. § 65-4.4, which establishes the Insurance Department Arbitration forum procedures, provides for the following:

(a) <u>Consolidation</u>—If the claims involved arose out of the same accident and involve common issues of fact;

(b) Evidence—The arbitrator or an attorney of record in the arbitration may subpoena witnesses or documents upon the arbitrator's own initiative or upon the request of any party, when the issues to be resolved require such witnesses or documents.  See, 11 NYCRR 65-4.4(e) and 11 NYCRR 65-4.5(o)(2).

(c) Extended Hearing Slots—Each hearing is slotted for fifteen (15) minutes unless the parties request additional time. For example, parties may require additional time to allow testimony by witnesses.  AAA, NY No-Fault Frequently Asked Questions, available at http://go.adr.org/rs/294-SFS-516/images/AAA_NY_NoFault_FAQs.pdf.

Based on the foregoing, it is clear that, despite Weir's assertions to the contrary, the nature of the No-Fault AAA forum does not render it "impractical for an arbitrator to adequately consider a pattern of fraudulent treatment."  Weir Declaration, ¶ 20.  Rather, GEICO need only avail itself of the procedures afforded by the AAA forum to adequately defend itself against what it alleges are fraudulent claims.  GEICO, therefore, will not suffer irreparable harm absent the requested relief, nor will it suffer (or does it even allege) extreme hardship or possible destruction of the business.

The irreparable harm must be "neither remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp.,* 888 F.2d at 975.  In this instance, GEICO concedes that inconsistent rulings merely "<u>threaten</u> GEICO with irreparable harm".  Memorandum at 12 (emphasis added). Further, GEICO's assertions that it will suffer irreparable harm because award by arbitrations will "frustrate GEICO's attempt to obtain declaratory relief in this action" are unfounded.  "[L]ikely inconsistencies amongst the prospective arbitral rulings themselves, and between the prospective arbitral rulings and this Court's ultimate disposition of the declaratory judgment and fraud-based claims" will not cause GEICO irreparable harm.  Specifically, arbitration decisions have no

precedential value.  See, e.g., *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 259 (1987) (arbitrators are not bound by precedent and are actually discouraged by their associations from giving reasons for a decision)(citations omitted).

Additionally, "it is settled law that 'a district court may not issue an injunction simply to be the first court to reach a judgment and thereby avoid issues' of preclusion and prevent duplicative litigation."  *SR Intern. Bus. Ins. Co. Ltd. v. World Trade Ctr. Properties, LLC*, 445 F. Supp. 2d 356 at 360 (*citing Retirement Sys. Of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 429 (2d Cir. 2004)). Further, where the injunction to stay the state actions "would serve no other purpose than to prevent duplicative litigation and the preclusive effect of state rulings, the aid-of-jurisdiction exception to the Anti-Injunction Act does not apply." *Id.* at 366.

## III.    GEICO'S Arguments Fail With Regard to Either Avenue Through Which They Could Obtain an Injunction

The second prong GEICO must establish is either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *McMahon*, 2014 WL 6886096 at *1.  GEICO has not established its burden with regard to either prong.

### A.    Plaintiffs Have Not Established a Likelihood of Success on the Merits or Sufficiently Serious Questions Going to the Merits to Make Them a Fair Ground for Litigation

GEICO cites several previous decisions to justify their failure to show a likelihood of success on the merits.  Specifically, Plaintiffs concede that "any likelihood of success inquiry would be premature."  Plaintiffs' Memorandum at 13 (citing *Parisien,* 352 F. Supp. 3d  at 234; *Elzanaty*, 929 F. Supp. 2d at 217).

Further, Plaintiffs have not established a "sufficiently serious questions going to the merits to make them a fair ground for litigation". *Parisien,* 352 F. Supp. 3d  at 233. The Second Circuit has held that the overall burden of the "serious questions" standard is "no lighter" than the "likelihood of success" standard, because it requires the balance of hardships to "decidedly" tip in the movant's favor. *See Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).  The failure to present a factual basis for likelihood of success on the merits warrants denial of application. *Perkins,* 2014 WL 2003014, at *2.  Plaintiffs have not demonstrated they have competent proofs to satisfy either the likelihood of success or the serious question standard.

First, despite Plaintiffs' contention that it has set forth "well-pleaded allegations" and "considerable evidence," to support its allegations, those allegations, and the purported evidence, are severely lacking.  As discussed above, neither GEICO's Complaint, nor the declarations supporting its motion, support the allegations contained in the Complaint.  Further, GEICO outright ignores the fatal flaw in its allegations: the fact that the laboratory provided services pursuant to valid orders from the Insureds' physicians.  Although GEICO's Complaint attempts to detail a scheme involving John Doe defendants, who are described as "unlicensed laypersons," GEICO fails to explain the genesis of the prescriptions from the physicians treating the GEICO Insured patients, and makes no allegations with regard to Defendants providing services in the absence of such prescriptions.  As such, Defendants have little likelihood of success, and fail to raise sufficiently serious questions going to the merits of this litigation.

Further, Plaintiffs cite various cases to support their contention that "[i]n similar situations, courts have not hesitated to find that a stay was warranted".  Memorandum at 13. However, unlike GEICO's instant Complaint, the allegations in the cases relied on by GEICO

were actually supported by substantial factual basis.  See, *e.g.*, discussion on cited cases *supra*. As such, despite GEICO's assertions, the cited cases are not "similar" and do nothing to establish a serious question going to the merits to make them a fair ground for litigation.

With regard to GEICO's argument that the results of such testing were received too late to be useful with respect to the procedure for which they were prescribed, as indicated in the letter of medical necessity, according to the FDA, urinalysis is a "common test[ ] preformed before surgery".  Although the results may not have been reported prior to the surgical procedure, there is nothing to preclude the use of same in the continuing treatment of each specific patient.  As indicated in the article authored by GEICO's expert, Dr. Gharibo, such tests are "a useful adjunctive testing mechanism that should be employed along with other forms of patient monitoring".  Ex. A, p. 506.

### B.  The Balance of Hardships Tips Decidedly In Defendants' Favor

When a party moves for a preliminary injunction asserting that there are "sufficiently serious questions going to the merits," as argued by Plaintiffs herein, the movant must also demonstrate "a balance of hardships decidedly tipped in the movant's favor." *McMahon v. Johnson*, 2014 WL 6886096, at *1 (E.D.N.Y. Dec. 8, 2014) *citing Green Party of New York State*, 389 F.3d at 418. Here, however, the balance of hardships weighs overwhelmingly in favor of Defendants due to the very real and present threat of policy exhaustion, which jeopardizes Defendants' ability to obtain <u>any</u> reimbursement for the valid medical treatment that they collectively rendered to these many patients, should the Court grant the stay and other injunctive relief sought by Plaintiffs. This detrimental impact to Defendants is only exacerbated by the substantial financial burden on the medical industry caused by the Covid-19 pandemic and GEICO's significant share of the No-Fault market.

It is a basic tenet of the no-fault statutory framework that there are a finite amount of no-fault benefits available under each automobile insurance policy, with the statutory maximum being $50,000.00 in New York and $15,000 in New Jersey.  Once the no-fault insurer has issued a sufficient number of payments to exhaust the policy limits, any medical provider seeking reimbursement for services rendered will find its claim denied on the grounds of policy exhaustion, and will be unable to recover from the no-fault insurer.

The prevailing law favors the no-fault insurer in this regard; there are almost no circumstances where the insurer can be required to issue payments over and above the policy limits, with limited exceptions for certain types of bad faith or mishandling of claims by the insurer. *See generally,* 11 NYCRR 65-3.15; *Harmonic Physical Therapy, P.C. v. Praetorian Ins. Co.*, 47 Misc. 3d 137(A) (App. Term 1st Dept. 2015); *Nyack Hospital v. General Motors Acceptance Corp.,* 8 N.Y.3d 294, 832 N.Y.S.2d 880 (2007). As such, policy exhaustion effectively forecloses the healthcare provider's ability to recover from the no-fault insurer.

Accordingly, a stay of the collection proceedings would not only be detrimental to Defendants, but would permanently prejudice Defendants' ability to recover on those claims, even if Plaintiffs' instant declaratory judgment action is ultimately unsuccessful. As GEICO could and would continue to pay out on other claims during the period of the stay to non-defendant medical providers exhausting the available funds, the stay could result in a virtually irreversible bar to Defendants' recovery from GEICO, regardless of the outcome of the litigation. Thus, there is no basis for GEICO's suggestion that the Defendant medical providers "will suffer no hardship" if the pending arbitrations were stayed and Defendants enjoined from filing any future no-fault collection actions against GEICO. Memorandum at 18-19. In contrast, if those collection actions are allowed to proceed, and Plaintiffs do prevail in this litigation, Plaintiffs will

still have recourse and an opportunity to pursue reimbursement of those funds if they are ultimately successful in the instant litigation.

Finally, GEICO fails to set forth any specific hardship it will suffer in the absence of the injunctions, but instead focuses only on what it purports to be a lack of hardship to Defendants. This is not sufficient to meet the high standard for a stay and injunction.  On the other hand, the hardship caused by a delay in revenue for medical services that have already been provided, which supports Defendants' operating costs, tips the scale decidedly in favor of denial of GEICO's motion.

## IV.    If This Court Grants Plaintiffs' Motion, Plaintiffs Should Be Required To Post Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c). "Security furnished under Rule 65(c) will not include any damages for claims against the party who instituted the action other than those directly attributable to the improvidently issued injunction."  *Interlink Int'l Fin. Servs., Inc. v. Block*, 145 F. Supp. 2d 312, 315 (S.D.N.Y. 2001) (internal quotation marks and citations omitted).  Plaintiff insurance carriers have previously been required to post such bond in this district.  See *Strut*, No. 2019 WL 6338023 at *9 ( "In the event that GEICO does not ultimately prevail, some protection should be in place for payments that defendants will not be receiving. GEICO itself suggested in the complaint that, as of June 2019, approximately $500,000 in pending no-fault insurance claims potentially had to be paid. That number should suffice, as it is grounded in actual pending claims and is not speculative.")(internal citations omitted).

Further, despite Plaintiffs' assertions that "movant has not demonstrated any proof of likelihood of actual harm," in actuality, Defendants have shown substantial likelihood of harm if the Court grants the relief sought in Plaintiffs' motion.  As such, if Plaintiffs' motion is granted, Plaintiffs should be required to post bond sufficient to cover the amount of the pending claims.

## <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiffs' motion to stay and enjoin Defendants' collection proceedings with regard to the claims submitted to GEICO for medical services legally provided to patients insured by one of Plaintiffs' no-fault insurance policies should be denied.

Dated: Garden City, New York
        September 15, 2020

                        **THE RUSSELL FRIEDMAN LAW GROUP, LLP**
                        *Attorneys for Defendants*
            By:     /s/*Jennifer B. Strong*
                        Jennifer B. Strong
                        400 Garden City Plaza, Suite 500
                        Garden City, New York 11530
                        Tel: 516.355.9696