UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO INDEMNITY COMPANY,
GEICO GENERAL INSURANCE COMPANY,
GEICO CASUALTY COMPANY,

                Plaintiffs,

              **MEMORANDUM & ORDER**

      -against-           20-CV-2391 (KAM)

ADVANCED COMPREHENSIVE LABOROTAORY,
LLC D/B/A TOPLAB, MARK GLADSTEIN,
M.D., VICTORIA FRENKEL, AND JOHN
DOES NOS. "1" THROUGH "10,"

                Defendants.
------------------------------------X
KIYO A. MATSUMOTO, United States District Judge:

        Plaintiffs Government Employees Insurance Company,

GEICO Indemnity Company, and GEICO Casualty Company (together,

"plaintiffs" or "GEICO"), commenced this litigation against

Advanced Comprehensive Laboratory, LLC d/b/a TopLab ("Advanced

Labs"), Mark Gladstein, M.D., and Victoria Frenkel

(collectively, "defendants") on May 29, 2020.  (ECF No. 1,

Complaint ("Compl.").)  On September 22, 2020, GEICO moved for

injunctive relief, seeking: (1) a stay of all collection

arbitrations arising under New York's No-Fault insurance laws,

and pending before the American Arbitration Association ("AAA"),

between defendant Advanced Labs and GEICO, until resolution of

the instant federal action; and (2) an injunction prohibiting

Advanced Labs, along with its record owners, Gladstein and

Frenkel, from commencing any new No-Fault collection
arbitrations or civil collection lawsuits against GEICO on
behalf of Advanced Labs, until this action is resolved.  (ECF
No. 18-2, Memorandum of Law in Support of Plaintiffs' Motion
("Pl. Mem."), 1.)  For the reasons set forth below, plaintiffs'
motion for injunctive relief is granted.

**BACKGROUND**

**I.   New York's No-Fault Insurance Laws**

New York enacted the Comprehensive Automobile
Insurance Reparations Act, New York Insurance Law ("N.Y. Ins.
Law") §§ 5101–5109, for the purpose of "ensur[ing] prompt
compensation for losses incurred by accident victims without
regard to fault or negligence, to reduce the burden on the
courts[,] and to provide substantial premium savings to New York
motorists."  *Med. Soc'y of State of N.Y. v. Serio*, 800 N.E.2d
728, 731 (N.Y. 2003) (citing Governor's Mem. approving L. 1973,
ch. 13, 1973 McKinney's Session Laws of N.Y., at 2335).  No-
Fault insurers, like GEICO, may reimburse patients up to $50,000
without proof of the other driver's fault; reimbursements may
include necessary expenses incurred for medical or other
professional health services.  *See* N.Y. Ins. Law §§ 5102(a)(1),
(b).  Insurers are required to verify a claim, and then pay or
deny the claim within 30 days.  *See* N.Y. Ins. Law § 5106(a);
N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 11 §§ 65-3.8(a), (c).

Under New York law, an insured may assign his or her benefits "directly to providers of health care services."  11 NYCRR § 65-3.11(a).  The regulations specify the criteria needed for a health care provider to receive direct payment from the insurer. *See* 11 NYCRR § 65-3.11(b).

Section 5106 of the New York Insurance Law creates a "[f]air claims settlement" procedure for all No-Fault claims. No-Fault benefits are deemed overdue if they are not paid or denied within 30 calendar days after proof of claim is submitted.  *See* N.Y. Ins. L. § 5106(a); 11 NYCRR § 65-3.8(c). If an insurer fails to comply with this timeframe, it will be precluded from asserting many (but not all) defenses to coverage, including most fraud-based defenses.  *See Fair Price Med. Supply Corp. v. Travelers Indem. Co.*, 890 N.E.2d 233, 236 (N.Y. 2008); *Cent. Gen. Hosp. v. Chubb Grp. of Ins. Companies*, 681 N.E.2d 413, 415 (N.Y. 1997).  A claimant may bring an action in state court to recover overdue No-Fault benefits, and in any such action the claimant need only show that the prescribed statutory billing forms were mailed and received and that the benefits are overdue.  *See Viviane Etienne Med. Care, P.C. v. Country-Wide Ins. Co.*, 35 N.E.3d 451, 457 (N.Y. 2015).  In addition, insurers are required to include a clause in their policies allowing the claimant to seek arbitration of their

claims for No-Fault benefits. *See* N.Y. Ins. L. § 5106(b); 11 NYCRR § 65-1.1(a), (d).

New York's No-Fault insurance law establishes the procedures for arbitration of disputed claims. *See* 11 NYCRR § 65-4.5. By statute, the New York Department of Financial Services Superintendent has designated AAA as the body responsible for administration of the No-Fault arbitration process. *Id.* § 65-4.2(a)(2). Insurers generally bear the costs associated with the arbitration process in direct proportion to the frequency with which they are named as respondents. *Id.* § 65-4.2(c)(1). The Second Circuit has commented that the "arbitration process for No-Fault coverage is an expedited, simplified affair meant to work as quickly and efficiently as possible. Discovery is limited or non-existent. Complex fraud and racketeering claims, maturing years after the initial claimants were fully reimbursed, cannot be shoehorned into this system." *Allstate Ins. Co. v. Mun*, 751 F.3d 94, 99 (2d Cir. 2014) (citing 11 NYCRR § 65-4.5)).

An insurer who pays No-Fault benefits and subsequently discovers fraud may bring an action for damages. *See State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*, 589 F. Supp. 2d 221, 229-235 (E.D.N.Y. 2008); *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 2008 WL 4146190, at *6-7 (E.D.N.Y. Sept. 5, 2008). The insurer may also bring an action

for a declaratory judgment that it is not liable for any unpaid claims where the provider has committed fraud or breached applicable No-Fault regulations.  *See* 28 U.S.C. § 2201; *Gov't Emps. Ins. Co. v. Jacques*, 2017 WL 9487191, at *9-*11 (E.D.N.Y. Feb. 13, 2017), *report and recommendation adopted*, 2017 WL 1214460 (E.D.N.Y. Mar. 31, 2017); *State Farm Mut. Auto. Ins. Co. v. Cohan*, 2009 WL 10449036, at *4 (E.D.N.Y. Dec. 30, 2009), *report and recommendation adopted*, 2010 WL 890975 (E.D.N.Y. Mar. 8, 2010).  If an insurer is precluded from asserting a defense to coverage (such as provider fraud) due to its noncompliance with the 30-day rule, however, it will also be precluded from obtaining a declaratory judgment on those same grounds.  *See Allstate Ins. Co. v. Williams*, 2015 WL 5560543, at *7 (E.D.N.Y. Aug. 28, 2015), *report and recommendation adopted*, 2015 WL 5560546 (E.D.N.Y. 2015); *Gov't Emps. Ins. Co. v. AMD Chiropractic, P.C.*, 2013 WL 5131057, at *8 (E.D.N.Y. Sept. 12, 2013).

## II.  GEICO's Allegations

GEICO alleges that, since 2018, the defendants have submitted more $10 million in fraudulent laboratory toxicology billings to GEICO for medically unnecessary screening tests as part of a scheme designed to exploit New York's No-Fault insurance laws.  (Compl. ¶¶ 2, 51.)  Defendants allegedly perpetrated the fraudulent scheme using unlawful referral and

kickback arrangements to fraudulently bill GEICO for urine screening tests purportedly provided to individual-insureds, who claimed eligibility for coverage under GEICO's no-fault insurance policies.  (*Id.* ¶ 2.)  Through this unlawful scheme, Gladstein, Frenkel, and John Doe defendants "1"-"10" accessed a network of New York-based patients to fraudulently bill GEICO without providing "genuine patient care."  (*Id.* ¶ 3.)  In other words, GEICO alleges that the urine drugs screens were medically unnecessary, illusory, and intended only to exploit the patients for financial gain.  (*Id.* ¶¶ 1,4,6, 51.)

GEICO seeks to recover more than $945,000 that defendants obtained from GEICO and further seeks a declaration from the court, pursuant to 28 U.S.C. §§ 2201, 2202, that GEICO is not legally obligated to reimburse Advanced Labs for over $8,800,000 in pending No-Fault claims that defendants either submitted or caused to be submitted on or behalf of Advanced Labs.  (Compl. ¶ 4.)  GEICO also seeks recovery of approximately $945,000 in fraudulent bills submitted through Advanced Labs, and asserts causes of action under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), conspiracy to violate RICO, common law fraud, aiding and abetting fraud, and unjust enrichment.  (*Id.* ¶¶ 128-62.)

**III.   Collection Proceedings**

According to a declaration submitted by GEICO Claims Manager Robert Weir, Advanced Labs is currently prosecuting more than 2,430 collection arbitrations against GEICO before AAA. (ECF No. 18-5, Declaration of Robert Weir ("Weir Decl."), ¶ 7.) Advanced Labs served approximately 125 arbitrations on GEICO after the commencement of this federal suit.  (*Id.* ¶ 8.) On over 3,000 separate occasions, Advanced Labs submitted charges to GEICO for quantitative urine drug screens totaling over $8,000,000.  (*Id.* ¶ 6.)  In total, Advanced Labs submitted more than $10,000,000 in billing charges to GEICO since 2018 for reimbursement.  (*Id.* ¶ 8.)  GEICO seeks to stay these pending arbitrations and enjoin defendants from filing additional arbitrations and collection actions.  (*Id.* ¶ 9.)

In support of plaintiffs' requested relief, Weir asserts the procedures and practices in No-Fault arbitration proceedings impose critical handicaps on insurers like GEICO. Insurers generally are not permitted to seek or obtain pre-hearing discovery beyond the discrete bill and claim at issue, which hinders an insurer's ability to demonstrate a pattern of medically unnecessary treatment or fraudulent billing practices across multiple patients and claims.  (*Id.* ¶ 18.)  During the pendency of this case, the defendants have continued to pursue collection of individual bills through arbitration and state

7

court proceedings.  (Pl. Mem. 2; Weir Decl. ¶ 7.)  GEICO argues that the statutorily expedited No-Fault arbitration procedures and civil court proceedings cannot accommodate the time or resources needed for GEICO to demonstrate the complex "fraudulent scheme involving fraudulent behavior that – by Defendants' design – is not readily apparent from the face of any individual bill or treatment record."  (Weir Decl. ¶ 21.)

**DISCUSSION**

GEICO moves to stay and enjoin defendants' No-Fault collection proceedings.  Courts in this circuit have looked to the preliminary injunction standard under similar circumstances.  *See Gov't Emps. Ins. Co. v. Cean*, No. 19-cv-2363 (PKC)(SMG), 2019 WL 6253804, at *4 (E.D.N.Y. Nov. 22, 2019) (citing *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 217 (E.D.N.Y. 2013)); *see also Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005).  To justify a preliminary injunction, "a movant must demonstrate (1) irreparable harm absent injunctive relief; and (2) 'either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor.'"  *Metro. Taxicab Bd. of Trade v. City of New York,* 615 F.3d 152, 156 (2d Cir. 2010) (quoting *Almontaser v. New York City Dept. of Educ.,* 519 F.3d 505, 508 (2d Cir. 2008)).  "The showing of irreparable harm is [p]erhaps the

single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered." *Elzanaty*, 929 F. Supp. 2d at 221 (quoting *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002)).

As a threshold matter, the court notes that GEICO's complaint and the instant federal action are substantially similar to several ongoing actions involving analogous allegations of widespread fraudulent medical billing under New York's No-Fault insurance laws. *See Gov't Employees Ins. Co. v. Moshe*, No. 20-cv-1098(FB)(RER), 2020 WL 3503176, at *4 (E.D.N.Y. June 29, 2020); *Gov't Employees Ins. Co. v. Strut*, No. 19-cv-728 (JLS), 2020 WL 1820500, at *3 (W.D.N.Y. Apr. 10, 2020); *Gov't Employees Ins. Co. v. Wellmart RX, Inc.*, 435 F. Supp. 3d 443, 456 (E.D.N.Y. 2020), *appeal dismissed* (May 11, 2020); *Cean*, 2019 WL 6253804, at *6; *State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215, 235 (E.D.N.Y. 2018); *Gov't Employees Ins. Co. v. Mayzenberg*, No. 17-cv-2802, 2018 WL 6031156, at *11 (E.D.N.Y. Nov. 16, 2018); *Gov't Employees Ins. Co. v. Strutsovskiy*, No. 12-cv-330, 2017 WL 4837584, at *8 (W.D.N.Y. Oct. 26, 2017); *Elzanaty*, 929 F. Supp. 2d at 223. Indeed, this court previously granted injunctive relief in favor of GEICO in a substantially similar action. *See Wellmart*, 435 F. Supp. 3d at 456. Although defendants argue that each previous case is

9

factually distinguishable and thereby not persuasive authority, this court disagrees.

Having considered the numerous district court decisions in this Circuit addressing similar circumstances and reviewed the factual allegations in the instant complaint, this court concludes that GEICO has satisfied the elements for injunctive relief.  Accordingly, for the reasons set forth below, GEICO's motion to stay all pending No-Fault collection arbitrations before the AAA involving Advanced Labs, and to enjoin any future No-Fault collection arbitrations before the AAA by Advanced Labs, pending resolution of the instant federal action, is granted.

**a. Irreparable Harm**

"To establish irreparable harm, a party seeking preliminary injunctive relief must show that 'there is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'"  *Kamerling*, 295 F.3d at 214 (quoting *New York Pathological & X-Ray Labs., Inc. v. INS*, 523 F.2d 79, 81 (2d Cir. 1975)).  "Irreparable harm occurs where 'an insurer is required to waste time defending numerous no-fault actions when those same proceedings could be resolved globally in a single, pending declaratory judgment action.'"  *Moshe*, 2020 WL 3503176, at *1 (quoting *Parisien*, 352 F. Supp. 3d at 233).

Where, as here and in *Wellmart*, an insurer alleges a risk of inconsistent judgments in No-Fault arbitrations and RICO- and fraud-based litigation in federal court, district courts in this Circuit have found irreparable harm. *See, e.g.*, *Mayzenberg*, 2018 WL 6031156, at *5 ("The concern is that allowing over 180 arbitrations to be heard by a mix of arbitrators, each of whom will likely come to their own independent and contradictory conclusions that may be rendered ineffective by this Court, will result in harm to GEICO from which it cannot recover."); *Moshe*, 2020 WL 3503176, at *2 (finding irreparable harm where 4,786 pending arbitrations against GEICO presented a risk of inconsistent judgments); *Wellmart*, 435 F. Supp. at 449 (finding irreparable harm where the "crux of GEICO's argument is, absent a stay, the collection proceedings will not merely drain GEICO of time and resources, but will also invite inconsistent judicial outcomes"); *Cean*, 2019 WL 6253804, at *5 (finding irreparable harm where an insurer spends resources "defending numerous no-fault actions" when those actions could be resolved in a "single, pending declaratory judgment action"); *Strutsovskiy*, 2017 WL 4837584, at *6-7 (W.D.N.Y. Oct. 26, 2017) (finding irreparable harm in similar circumstances); *see also Liberty Mut. Ins. v. Excel Imaging*, 879 F. Supp. 2d 243, 264 (E.D.N.Y. 2012) ("Permitting these individual claims to proceed to arbitration while

[insurer's] claim for a declaratory judgment remains pending in this court puts the plaintiffs at significant risk of multiple judgments that may be inconsistent with the ultimate decision in this case"). The conclusions and findings by numerous district courts in this Circuit support this court's conclusion that GEICO will suffer irreparable harm without injunctive relief.

Here, GEICO alleges that defendants have perpetrated a fraudulent medical billing scheme where defendants submitted medically unnecessary claims for reimbursement to GEICO in furtherance of defendants' financial gain under New York's No-Fault insurance regime. (*See* Compl. ¶ 1.) In support of its allegations, GEICO provides specific factual examples of defendants' allegedly fraudulent scheme and exploitation of the New York No-Fault insurance system. (*See* Compl. at ¶¶ 81 (examples of medically unnecessary tests), 86 (examples of Advance Labs receiving referrals and processing drug screens after insured received anesthesia services), 89 (examples of Advance Labs' billing for qualitative and quantitative urine drug screens), 96 (examples showing pattern in Advance Labs' billing practices charging sixty-eight separate quantitative urine drug screens).) According to GEICO, Advanced Labs is currently prosecuting more than 2,430 collection arbitrations against GEICO before the AAA and has served approximately 125 arbitrations on GEICO after the commencement of this federal

suit.  (Weir Decl. ¶¶ 7-8.)  Thus, without injunctive relief,
GEICO alleges that it will suffer irreparable harm in the form
of wasted resources and inconsistent judicial judgments.  This
court agrees.  Indeed, allowing the 2,430 collection
arbitrations to proceed before different arbitrators would
likely subject GEICO to "independent and contradictory
conclusions" that ultimately may "be rendered ineffective by
this Court," pending the disposition of GEICO's declaratory
judgment claim.  *Mayzenberg*, 2018 WL 6031156, at *5.  Moreover,
under these circumstances, the court agrees that GEICO will
suffer irreparable injury that "is neither remote nor
speculative" without injunctive relief because Advanced Labs
continues to commence arbitrations before the AAA.  *Grand River
Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir.
2007).  Thus, for the reasons set forth above and as consistent
with courts across this Circuit, this court concludes that GEICO
has demonstrated irreparable harm.

In response to the decisions by district courts in
this Circuit, defendants argue that those cases are
"distinguishable in that the stays and injunctions were based on
well-pled complaints and solid factual support."  (ECF No. 19-4,
Defendants' Memorandum of Law in Opposition ("Def. Mem."), at
13.)  Specifically, defendants argue that the previous cases
involving GEICO and allegations of fraud under New York's No-

13

Fault laws, contained detailed instances of allegedly fraudulent conduct and other indicia of wrongdoing. (*Id.* at 14.) In other words, defendants argue that the evidence proffered by GEICO is insufficient to satisfy the elements for injunctive relief. As explained above, however, GEICO alleged specific factual examples of purported medically unnecessary billing in the form of drug urine tests ordered but not generated until after interventional pain management and anesthesia services had already been rendered.[1] (*See* Compl. ¶¶ 81, 86, 89, 96.) GEICO's detailed allegations regarding the specific timing and frequency of defendants' urine screening tests, read collectively with GEICO's supporting exhibits and declarations, are sufficiently detailed to satisfy the elements for injunctive relief.

With respect to irreparable harm, defendants rely on *Allstate Ins. Co. v. Harvey Family Chiropractic*, a summary order

---

[1]    The court agrees that the instant action may be distinguishable from *Wellmart* with respect to the allegation that Wellmart RX was undertaking steps to render itself judgment proof against any potential monetary judgment awarded to GEICO. *See Wellmart*, 435 F. Supp. 3d at 452. Further, the court also agrees that the instant action, unlike other previous suits, may not contain identical evidence such as examples of prior litigation against defendants for healthcare fraud. *See Strutsovskiy*, 2017 WL 4837584, at *6 (granting injunctive relief after reviewing, among other facts, defendant's felony conviction in connection with an insurance fraud scheme). Nonetheless, in light of the evidence provided by GEICO and the detailed allegations in the complaint, the court concludes that GEICO satisfied the elements for injunctive relief for the reasons explained herein. *See Moshe*, 2020 WL 3503176, at *2 (rejecting insufficient proof of fraud argument and granting injunctive relief, reasoning that "a complaint alone can be sufficient to grant an injunction"); *Strut*, 2020 WL 1820500, at *2 (rejecting insufficient proof argument where complaint provided "examples to support each of [GEICO's] fraud theories, citing specific patients, accident dates, and treatment dates."); *Excel Imaging*, 879 F. Supp. 2d at 254-64 (staying arbitration based on facts "primarily from the complaint").

issued by the Second Circuit which affirmed the denial of Allstate's request to stay No-Fault arbitrations and civil court collection suits.  677 F. App'x 716 (2d Cir. 2017).  For the reasons set forth in this court's decision in *Wellmart*, however, *Harvey* does not support the proposition that injunctive relief cannot be granted in the light of "the risk of inconsistent judgments, or of the risk that money damages would not be available if plaintiff ultimately obtained a declaratory judgment."  435 F. Supp. 3d at 451; *see also Moshe*, 2020 WL 3503176, at *2 ("*Harvey* does not preclude granting an injunction to avoid inconsistent judgments").  Because defendants failed to meaningfully confront and distinguish this court's reasoning in *Wellmart*, for the reasons explained in that case, this court similarly rejects defendants' argument that GEICO will not suffer irreparable harm absent injunctive relief.

If Advanced Labs is permitted to prosecute the ongoing collection proceedings, GEICO faces imminent and non-speculative risks of inconsistent judgments and unnecessary expenditure of time and resources on arbitrations that may be resolved by the instant, pending declaratory judgment action.  Accordingly, the court concludes that GEICO has demonstrated irreparable harm absent injunctive relief.

15

### b. Serious Questions Going to the Merits

For a preliminary injunction to issue, there must be either "a likelihood of success on the merits," or "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly" in the movant's favor. *Parisien*, 352 F. Supp. 3d at 234 (E.D.N.Y. 2018) (citing *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)). "Likelihood of success is not the focus at the early stages of a case such as this, because any likelihood of success inquiry would be premature. Instead, the Court looks to whether there is a serious question going to the merits to make them a fair ground for trial." *Id.* (quoting *Elzanaty*, 929 F.Supp.2d at 217); *see also Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) ("The 'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction. Because the moving party must not only show that there are 'serious questions' going to the merits, but must additionally establish that 'the balance of hardships tips decidedly' in its favor, its overall burden is no

lighter than the one it bears under the 'likelihood of success' standard.").

Here, as in *Wellmart*, GEICO meets the threshold of showing a serious question going to the merits.  435 F. Supp. 3d at 453.  Plaintiffs seek a declaratory judgment that Advanced Labs has no right to receive payment for over $8.8 million in pending claims submitted to GEICO because, *inter alia*, the billed-for services were "medically unnecessary and were provided -- to the extent that they were provided at all -- pursuant to pre-determined fraudulent protocols designed to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds." (Compl. ¶ 124.)  GEICO's complaint "detail[s] a complicated scheme of alleged fraudulent activity," *Elzanaty*, 929 F. Supp. 2d at 222, supported by specific examples and exhibits.  For example, the complaint provides a detailed narrative of different instances, in which the defendants performed urine drug screens that appear to be unnecessary because they were generated after: "either (i) the interventional pain management and anesthesia services had already been performed; or (ii) the referring physician had already issued a prescription for pain management medication." (*Id.* ¶¶ 80-82.)  Moreover, these drug screens were provided and billed through Advanced Labs, but allegedly "not incorporated into the Insureds' treatment plan, played no genuine role in the

17

treatment or care of the Insureds, and no one responded to the irregularities on the urine drug tests even when illicit drugs were reported." (*Id.* ¶ 83.)  Further, GEICO also alleges that Advanced Labs billed for both "qualitative and quantitative urine drug screens" to maximize profits from medically unnecessary testing and provides ten patient narratives describing the allegedly duplicative testing.[2]  (*Id.* ¶¶ 88-89.) The complaint also appends documentation to support GEICO's claims of fraudulent and medically unnecessary treatment, including "a representative sample of the fraudulent claims," (*Id.* ¶ 8), which shows 15,205 allegedly fraudulent claims identified by GEICO as of the date the instant suit commenced.

Furthermore, in support of its motion for injunctive relief, GEICO provided declarations and underlying treatment records in support of its contentions that Advanced Labs submitted claims to GEICO for medically unnecessary drug screens.  Christopher G. Gharibo, M.D., a New York-licensed doctor specializing in the field of pain medicine and certified by the American Board of Anesthesiology, submitted a declaration on GEICO's behalf.  (ECF No. 18-4, Christopher G. Gharibo, M.D.

---

[2]     According to the complaint, qualitative testing "determines whether the drug is present in a test specimen" and is performed in the first instance. (Compl. ¶¶ 65-68.)  In contrast, quantitative testing "may be used to then determine the amount of the drug in the specimen" and "may also be used to detect a certain subset of drugs" not detectable by an initial qualitative test.  (*Id.* ¶¶ 70-71.)  Quantitative drug testing is a "more complex and costly testing process" and is "ordered markedly less frequently and is not medically necessary in the first instance."  (*Id.* ¶¶ 72-73.)

("Gharibo Decl."), ¶¶ 1-2.)  Based on his review of patient records from 109 individuals insured by GEICO, each of whom purported to provide urine drug screening tests to Advanced Labs, Dr. Gharibo concluded that the urine drug screening tests billed by Advanced Labs were:

> (i) ordered and performed in large volumes in a protocol fashion designed to exploit the patients for financial gain without regard to genuine patient care; (ii) the results of the urine drug screens were routinely not useful, reported or reviewed for their purported intended purpose and not incorporated into the patients' treatment plans; and (iii) were not medically necessary and were inconsistent with the standard of care.

(Gharibo Decl. ¶¶ 4, 11.)  Dr. Gharibo further concluded that "Advanced Labs frequently billed for both qualitative and quantitative urine drug screens ostensibly to confirm the results of contemporaneous in-office qualitative urine drug screens with negative results that were performed," which was both "not medically necessary" and "inconsistent with the standard of care." (*Id.* ¶ 15.)

In addition to Dr. Gharibo's declaration, GEICO also provided the underlying treatment records supporting the patient narratives described in the complaint. (*See* ECF No. 18-6, Bills and Laboratory Reports.)  GEICO also provided a letter of "medical necessity" submitted by Advanced Labs in connection with a drug test in preparation for a surgery. (*See* ECF No. 18-

19

11, Letter from Advanced Comprehensive Laboratory.)  In the
letter, Advanced Labs represents that "Routine Drug Screening
Tests are ordered before outpatient procedures to identify
potential problems that might complicate surgery." (*Id.* at 4.)
Nonetheless, as detailed by GEICO's submissions, the results
from this particular drug screening were generated and received
two days after the purported surgical procedure and
corresponding anesthesia services had been administered, thereby
supporting GEICO's allegations that these drug urine screenings
were medically unnecessary. (*See* ECF No. 18-10, Laboratory
Report at 6.)

     In response to Dr. Gharibo's detailed declaration
supporting GEICO's allegations, defendants attempt to impeach
Dr. Gharibo's declaration as contradicted by a 2010 medical
article authored by, among others, Dr. Gharibo. (*See* Def. Mem.
at 9-11 (citing ECF No. 19-2, Exhibit A, "The Role of Urine Drug
Test for Patient on Opioid Therapy," 2010 World Institute Pain,
Volume 10 Issue 6 (the "2010 article")).)  Specifically,
defendants point to several statements in the 2010 article that
purportedly support defendants' use of qualitative and
quantitative urine testing, and purportedly contradict Dr.
Gharibo's declaration: (1) "physicians can not reliably assess
potential drug abuse/misuse among a broad spectrum of pain
patients without some sort of test," and (2) "two main types of

20

urine testing" may be used in combination on patients during
opioid therapy. (Def. Mem. at 10-11.) As explained in Dr.
Gharibo's supplemental declaration, however, the 2010 article
"is explicitly limited to the legitimate use of urine drug
testing in the context of patients receiving opioid therapy for
chronic pain." (ECF No. 18-18, Supplemental Declaration of
Christopher G. Gharibo, M.D. ("Gharibo Supp. Decl.") ¶ 1.)
Accordingly, because the patient records Dr. Gharibo reviewed in
connection with his declaration "did not include any patients
who were receiving opioid therapy for chronic pain," the alleged
contradictions highlighted by defendants are irrelevant and
misplaced. (*Id.*) Defendants' second proffered article titled,
"Rational Urine Drug Monitoring in Patients Receiving Opioids
for Chronic Pain: Consensus Recommendations," is similarly
irrelevant due to its emphasis on opioid treatment.[3] (*See* ECF
No. 19-3.)

Viewing the record collectively, the complaint's
detailed allegations and exhibits, along with Dr. Gharibo's
declarations and the underlying treatment records, may satisfy

---

[3] The court notes that defendants, in opposition to GEICO's motion for
injunctive relief, failed to meaningfully reference the patient records
submitted by GEICO, failed to offer any expert affidavit, and failed to
submit an affidavit from a listed member of Advanced Labs, such as named
defendants Mark Gladstein, M.D. or Victoria Frenkel. Defendants failure to
submit such evidence bears no dispositive weight on their arguments against
GEICO's motion, but does support the court's conclusion that, based on
GEICO's currently unrefuted evidence and detailed allegations, GEICO has, at
a minimum, demonstrated sufficiently serious questions going to the merits.

the heightened "likelihood of success" standard, and, at a minimum, raise a serious question going to the merits as to whether defendants were providing medically necessary drug screenings.[4]  *See Parisien*, 352 F. Supp. 3d at 234 (finding serious question going to the merits where the complaint and exhibits alleged defendants provided unnecessary medical services); *Elzanaty*, 929 F. Supp. 2d at 222 (finding serious question going to the merits where complaint alleged "complicated scheme" of fraud); *see also State Farm Auto. Ins. Co. v. Physicians Injury Care Ctr.*, Inc., 2010 WL 11475709, at *6-*7, *14 (M.D. Fla. May 24, 2010) (holding that plaintiffs proved fraud based on evidence that 957 patients were subjected to an identical treatment protocol with little deviation).

Defendants contend that GEICO has not demonstrated serious questions going to the merits because GEICO's allegations lack evidentiary support and Advanced Labs services were provided "pursuant to valid orders from the Insureds' physicians." (Def. Mem. at 19.)  As explained above, however, GEICO provided detailed allegations in its complaint and further

---

[4]      Because this Court finds irreparable harm to plaintiff, sufficiently serious questions going to the merits, and a balance of hardships tipping decidedly in favor of granting the stay, the court need not and does not address the likelihood of success.  *See Strutsovskiy*, 2017 WL 4837584, at *8 (declining to address the likelihood of success where the court found "sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in favor of granting the stay"); *Parisien*, 352 F. Supp. 3d at 234 (declining to address likelihood of success where the court found "that there are 'serious questions going to the merits'" in lieu of a 'likelihood of success on the merits'").

supported those allegations with an expert declaration and the underlying treatment records.  Thus, this court concludes that GEICO has presented evidence raising sufficiently serious questions going to the merits of this action.  Further, New York law provides that defendants may be held liable for medically unnecessary services under New York's No-Fault insurance laws. *See Long Is. Radiology v. Allstate Ins. Co.*, 36 A.D.3d 763, 764 (2d Dept. 2007) (holding in case involving down-stream MRI providers that "[s]ince the defense of lack of medical necessity may indisputably be raised by the defendants [insurers] against the injured party, it is available as against radiologists who accept assignments of no-fault benefits").  Accordingly, it is irrelevant whether Advanced Labs performed the drug screening tests pursuant to orders by physicians.[5]  For these reasons, defendants' contention that GEICO failed to raise sufficiently serious questions going to the merits of the litigation is unavailing.

### c. Balance of Hardships

Lastly, the court must balance the hardships of GEICO and defendants.  Given the court's finding that there are "serious questions going to the merits," for a preliminary

---

[5]    Although it may be true, as defendants state, that drug urine tests may be used in "continuing treatment" of each patient, (Def. Mem. at 20), the dispute over whether these urine tests were medically necessary for a particular surgery or for continuing treatment presents a question of fact, *i.e.,* a serious question going to the merits.

injunction to issue, the court must further determine if there is a "balance of hardships tipping decidedly" in GEICO's favor. *Parisien*, 352 F. Supp. 3d at 234.  Consistent with this court's decision in *Wellmart*, if the court grants plaintiffs' motion to enjoin the underlying collection proceedings and GEICO fails to prove its claims, "then, at worst, [defendants'] recovery of the no-fault benefits to which they are entitled will be delayed; all [defendants] can hope for in pursuing their parallel state lawsuits and arbitrations is to accelerate their receipt of benefits to which they are already entitled." *Parisien*, 352 F. Supp. 3d at 234-35.  If defendants' pending arbitration and civil collection proceedings are not stayed, then, as discussed above, GEICO will suffer irreparable harm.  Accordingly, the balance of hardships tips decidedly in favor of GEICO.

Furthermore, in balancing the hardships experienced by defendants, this court also concludes that defendants will suffer no prejudice if their right to collect the pending billing is adjudicated in a single declaratory judgment action. "Indeed, granting the stay and injunction will actually save all parties time and resources. Rather than adjudicating hundreds of individual claims in a piecemeal fashion, all claims can be efficiently and effectively dealt with in a single declaratory judgment action." *Cean*, 2019 WL 6253804, at *5 (citing *Elzanaty*, 929 F. Supp. 2d at 222 (finding that "all parties will

24

benefit from having the issue of fraudulent incorporation determined in one action")).  Furthermore, like defendants in other similar actions, here, defendants "will benefit from the stay if [they] ultimately prevail[ ] in this matter because [they] will be entitled to the collection of interest at a rate of two percent every month that the No-Fault payments are overdue."  *Strutsovskiy*, 2017 WL 4837584, at *8 (quoting *Elzanaty*, 929 F. Supp. 2d at 222); *see* 11 NYCRR § 65-3.9(1)(a) ("All overdue mandatory and additional personal injury protection benefits due an applicant or assignee shall bear interest at a rate of two percent per month, calculated on a pro-rata basis using a 30-day month.").  For the reasons set forth above, because GEICO has made the requisite showing for a stay and preliminary injunction to issue, and because defendants will not be prejudiced, GEICO's motion is granted.

### d. Undertaking

Federal Rules of Civil Procedure Rule 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  Though the Rule appears mandatory, an exception to the bond requirement has been crafted for cases involving the enforcement of "public

interests" arising out of "comprehensive federal health and welfare statutes." *Pharm. Soc. of State of N.Y., Inc. v. N.Y. State Dept. of Soc. Servs.*, 50 F.3d 1168, 1174 (2d Cir. 1995). In determining if claims involve the enforcement of public interest, "the nature of the rights being enforced, rather than the nature of the entity enforcing them, is the central consideration in determining whether the bond requirement should be waived under this exception." *Id.* at 1175.  Further, a district court has a wide discretion to dispense with the bond requirement "where there has been no proof of likelihood of harm." *Donohue v. Mangano*, 886 F. Supp. 2d 126, 163 (E.D.N.Y. 2012).

Although there is no federal health and welfare statute involved in this action, New York's No-Fault insurance statutes are laws "designed to protect accident victims regardless of fault by enabling them to obtain necessary medical attention without concern of the ability to pay." *Mayzenberg*, 2018 WL 6031156, at *10.  In *Mayzenberg*, the court waived the security requirement of Rule 65(c) in light of the systemic nature of the fraud alleged in the complaint and the lack of prejudice to defendants resulting from a preliminary injunction. *Id.*  The same considerations justify waiving the bond requirement here.

**CONCLUSION**

For the reasons set forth above, GEICO's motion, pending resolution of the instant federal action, to stay all pending No-Fault collection arbitrations between Advanced Labs and GEICO pending before the AAA, and to enjoin Defendants from commencing any new No-Fault insurance collection arbitrations or collection lawsuits against GEICO on behalf of Advanced Labs is GRANTED.

The parties shall proceed to discovery and are hereby referred to Magistrate Judge Vera M. Scanlon for all pre-trial matters.  Because the court is temporarily staying defendants' rights to commence further No-Fault insurance arbitrations and collection lawsuits against GEICO on behalf of Advanced Labs, all procedures in this matter should proceed on an expedited basis.

SO ORDERED.

```
      /s/
```
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York


Dated: Brooklyn, New York
       December 1, 2020